Case No. 21-SW-00433-WBG

**AFFIDAVIT FOR SEARCH WARRANT**

I, Victor Contreras, a detective with the Jackson County Drug Task Force (JCDTF), being duly sworn, hereby state as follows:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code.

2. I am a Detective with the Sugar Creek, Missouri Police Department, and have been a law enforcement officer since May 2015. I am currently assigned as a Detective with the Jackson County Drug Task Force (JCDTF) and have served in that capacity since September 2021.

3. During my career as a law enforcement officer, I have participated in numerous investigations where individuals have violated drug laws. Through my training and experience as a police officer, and through contacts with other agencies, I know the following:

   a. It is common for drug traffickers to retain contraband proceeds of drug sales, and records of drug transactions in secure locations within their residence to conceal them from Law Enforcement authorities.

   b. Drug traffickers commonly have in their possession (that is on their persons, at their residences, in their vehicles, and/or at their business), books, records, computers, computer disks and papers containing records of sales, and papers containing names, addresses, and telephone numbers that relate to distributors or purchasers of controlled substances. These records are frequently used to keep track of quantities of drugs sold and the amounts collected or owed. Drug traffickers also regularly have in their possession

stocks, bonds, other securities, and U.S. currency; these items are frequently the proceeds of drug transactions or instrumentalities of money laundering. Drug traffickers also frequently have paperwork and keys associated with safe deposit boxes they use to maintain records of sales of controlled substances, ledgers, drug debts and payments, as well as various forms of negotiable instruments and currency that are proceeds of their drug transactions.

c. Drug traffickers frequently maintain customer lists and drug source telephone information in cellular phone call logs and that cellular phones also contain photos and text messages of drug related information relevant to drug trafficking in the digital media/memory of the phones.

d. It is common practice for drug traffickers to keep U.S. currency in specific denominations utilizing "bundles." It is also common for drug traffickers to keep proceeds pertaining to the sale of illicit narcotics in safes, along with drug ledgers, controlled substances, and other equipment used in the furtherance of drug crimes.

e. Persons involved in the sale of illegal controlled substances commonly have in their possession (that is on their persons, at their residences, in their vehicles, and/or business), firearms, including but not limited to, handguns, rifles, shotguns, other weapons, and ammunition. Based on my training and experience, I know that drug traffickers commonly possess firearms as they commonly have in their possession valuable controlled substances and illicit drug proceeds that make the drug traffickers targets for potential

robberies. Firearms are also taken in trade for drugs and used to protect and secure the person's property, which may include, but not limited to, drugs, jewelry, body armor, drug paraphernalia, books, records, and United States currency.

f. Drug traffickers frequently have in their possession (that is on their persons, at their residences, in their vehicles, and/or business), digital or other types of scales used to weigh quantities of drugs, drug packaging and paraphernalia; electric tape and packaging/sealing material or sealing equipment. They also frequently possess photographs, in particular photographs of co-conspirators, assets, or controlled substances and they also frequently retain records and correspondence that serve as indicia of their occupancy, residency, or ownership of the premises where they are operating their drug trafficking business.

4. On numerous occasions, I have spoken with suspects, defendants, and drug trafficking investigators concerning the methods and practices of drug traffickers. Through these investigations, my training, experience, conversations with other experienced agents, drug investigators, and law enforcement personnel, I have become familiar with the methods employed by drug traffickers in general. This includes Mexico-based drug-trafficking organizations known to smuggle, safeguard, distribute drugs, and collect and launder drug-related proceeds. These methods include the use of debit calling cards, public telephones, wireless communication technology (such as paging devices and cellular telephones), counter surveillance, elaborately-planned smuggling schemes tied to legitimate businesses, false or fictitious identities, and the use

of coded communications in an attempt to avoid detection by law enforcement and circumvent drug investigations.

5. This affidavit is submitted in support of an application for a search warrant for the residence located at 6230 E. 11th St., Kansas City, Western District of Missouri and shed located on the north side of the same property (hereinafter referred to as the "**Target Residence**"). The primary residence structure is the fourth structure west of Freemont Avenue on the north side of E. 11th St. The structure is a two-story grey residence with a light brown composite roof. The front door is centered on the south facing side of the residence. The numbers "6230" are posted horizontally on a black mailbox located on the front entry gate to the main entry. A shed is located on the north side of the property and is accessed from the alley between E. 11th Street and E.10th Street. A detailed description of the **Target Residence** is located at Attachment A. Photographs of the **Target Residence** to include the shed are below.








The aerial photograph above was taken from a satellite photo using Google Maps. The shed, which is discussed in more detail later in the affidavit, is located within the red circle that has been added to the photograph.

6. If a search warrant were to be granted, I believe the following items would be seized: methamphetamine, firearms and/or ammunition, drug paraphernalia, drug packaging material, drug ledgers, electronic devices used to facilitate the distribution of controlled substances

(*i.e.*, cellphones, tablets, etc.), video surveillance equipment, and U.S. currency believed to be the proceeds of illegal sales of controlled substances.

## PROBABLE CAUSE

7. In June 2021, the JCDTF initiated an investigation into the drug trafficking activities of Baltazar FLORES-NORZAGARAY and others, both known and unknown. The investigation revealed that FLORES-NORZAGARAY resides at the **Target Residence** and distributes methamphetamine from the **Target Residence.**

8. On August 5, 2021 a JCDTF confidential informant (CI), who has been proven to be reliable, was introduced to FLORES-NORZAGARAY at the **Target Residence.** The CI purchased approximately 458.4 grams of methamphetamine from FLORES-NORZAGARAY inside of the **Target Residence** in exchange for pre-recorded JCDTF funds. The CI advised that FLORES-NORZAGARAY retrieved approximately one kilogram of methamphetamine from a shed in the backyard of the **Target Residence**. The substance purchased from FLORES-NORZAGARAY was field tested for the presence of methamphetamine, with positive results.

9. On August 19, 2021 the CI purchased approximately 474.1 grams of methamphetamine from FLORES-NORZAGARAY inside of the **Target Residence** in exchange for pre-recorded JCDTF funds. The substance purchased from FLORES-NORZAGARAY was field tested for the presence of methamphetamine, with positive results.

10. On August 19, 2021 the CI was shown a photograph of FLORES-NORZAGARAY where he/she positively identified him as the suspect who sold methamphetamine to the CI in the **Target Residence**.

11. On August 26, 2021 the CI purchased approximately 517.1 grams of methamphetamine from FLORES-NORZAGARAY inside of the **Target Residence** in exchange

for pre-recorded JCDTF funds. The CI observed what he/she believed was more than one kilogram of methamphetamine inside of a box in the living room of the **Target Residence**. The substance purchased from FLORES-NORZAGARAY was field tested for the presence of methamphetamine, with positive results.

12. On September 23, 2021 the CI purchased approximately 510.9 grams of methamphetamine from FLORES-NORZAGARAY inside of the **Target Residence** in exchange for pre-recorded JCDTF funds. The CI advised that FLORES-NORZAGARAY retrieved a duffle style bag from a bedroom which contained approximately five kilograms or more of methamphetamine. The substance purchased from FLORES-NORZAGARAY was field tested for the presence of methamphetamine, with positive results.

## CONCLUSION

13. I believe that there is probable cause to believe that large amounts of methamphetamine are being stored in and distributed from the **Target Residence**. I further believe that executing a search warrant at the **Target Residence** will yield the recovery of methamphetamine, drug packaging material, and large amounts of U.S. currency. In other words, I believe there is probable cause to conclude that FLORES-NORZAGARAY possesses

methamphetamine with the intent to distribute it, at the **Target Residence** and nearby shed, in violation of 21 U.S.C. § 841.

**FURTHER AFFIANT SAYETH NOT.**

VICTOR CONTRERAS
Detective
Jackson County Drug Task Force

Subscribed and sworn to before me

on this 6th day of October 2021. By telephone at 12:53 pm

HONORABLE W. BRIAN GADDY
United States Magistrate Judge
Western District of Missouri